IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-cv-00461-FL

| | |
|---|---|
| JADEN TERRANCE and JESSE TERRANCE, ) ) ) | |
| Appellants, ) ) | |
| v. ) ) | ORDER |
| COASTAL FEDERAL CREDIT UNION, ) ) | |
| Appellee. ) | |

This matter is before the court upon appellants' appeal of the bankruptcy court's order imposing sanctions on appellee for violating the automatic stay imposed by 11 U.S.C. § 362(a). The issues have been briefed fully, and in this posture are ripe for ruling. For the following reasons, the bankruptcy court's order is affirmed.

### STATEMENT OF THE CASE

Appellants, proceeding pro se, filed a voluntary chapter 7 bankruptcy petition April 8, 2025, in the Eastern District of North Carolina. After being subject to post-petition collection attempts by appellee, a creditor, appellants filed motion for sanctions for violating the automatic stay.

The bankruptcy court held hearing on appellants' motion June 18, 2025. The bankruptcy court then issued a written ruling (the "bankruptcy court's order") awarding $5,000 to appellant Jaden Terrance, finding appellee willfully violated the automatic stay as to appellant Jaden Terrance, but not as to appellant Jesse Terrance, and declining to award punitive damages. (See Bankruptcy Court's Order (DE 14-1) 129-137).

In the instant appeal, commenced July 30, 2025, appellants bring the following nine questions for the court's review:

1. Whether the bankruptcy court misapplied 11 U.S.C. § 362(a) by ruling that Jesse Marcel Terrance could not recover damages as a joint debtor because their name was not on the credit account, contrary to statutory language and established case law.

2. Whether the court erred by taking In re Lyle, 662 B.R. 229 (Bankr. E.D.N.C. 2024) out of context to limit joint debtor protections under § 362, creating an improper loophole for creditors.

3. Whether the court failed to make a clear record on whether the debtors' exhibits, declarations, and supplemental filings were admitted into evidence, despite the pro se debtors summarizing them under oath.

4. Whether the court violated due process by failing to offer disability accommodations when one debtor was visibly unable to respond during the hearing and then proceeding as if rights (e.g., cross-examination) had been waived.

5. Whether the court improperly treated the automatic stay as a passive defense rather than a robust protection, and failed to apply the presumption of willfulness under § 362(k) for post-petition violations despite undisputed notice.

6. Whether the court erred by failing to instruct the pro se debtors on the legal standard for proving damages, leaving them without an opportunity to satisfy the evidentiary threshold.

7. Whether the court allowed opposing counsel to make reputation-based arguments (e.g., familiarity with the court, client's good character) and failed to caution that rulings must rest solely on evidence, thereby creating an appearance of bias.

8. Whether the court failed to make findings of fact or conclusions of law on key evidence and claims presented . . .

9. Whether the court violated Fed. R. Civ. P. 52(a) by omitting findings on multiple categories of damages and evidence, depriving the appellate court of a meaningful record for review.

(DE 2 at 1-2).

Appellants request the following relief: "Recognize that Coastal Federal Credit Union willfully violated the automatic stay[,]" "[e]nter judgment directly on the existing record for full compensatory damages proven[,]" or alternatively "[r]emand solely for calculation of damages

only if the Court declines to reverse directly[,]" and "[a]ffirm that all Appellants' exhibits (A-0) were properly part of the evidentiary record." (Appellants' Br. (DE 22) at 34).

In support of their appeal, appellants rely on their motions for sanctions in the bankruptcy proceedings, a motion to restrict public access to the bankruptcy petition, the transcript of the June 18, 2025, sanctions hearing, and the bankruptcy court's order. Appellants also rely on the exhibits used in support of their motions for sanctions, which include: emails showing debt collection attempts, phone call logs, credit reports, medical documents regarding appellants' diagnoses, and emails from appellee's counsel. Appellee relies on the same.

## STATEMENT OF FACTS

The facts relevant to the appeal may be summarized as follows.

Appellants, a married couple, filed a voluntary joint petition for chapter 7 relief April 8, 2025. (DE 14-1 at 61-126). At the time of filing, appellant Jaden Terrance listed appellee Coastal Federal Credit Union as an unsecured creditor in the amount of $8,250. (Id. at 89). The petition states the debt applies to "[d]ebtor 1 only[,]" Jaden Terrance. (Id.). On April 9, 2025 appellee sent a letter to Jaden Terrance stating: "we have recently received notification that you have filed Chapter 7 Bankruptcy." (DE 14-1 at 35).

Around this time, appellee instituted a new collections software, which served to automatically flag accounts in bankruptcy and cease collection activity. (Hr'g Tr. 30:1-12). The software failed to correctly flag VISA credit card accounts, however, including Jaden Terrance's account, and therefore appellee's collection efforts continued. (See id.).

Appellee sent two emails to Jaden Terrance. (Id. at 9-10). Appellee also called Jaden Terrance 16 times between April 17, 2025 and May 15, 2025. (Hr'g Tr. 12:12-13). Jaden Terrance

attempted to return appellees calls twice, however, both attempts were outside appellee's operating hours. (Id. at 17:17-25).

On April 30, 2025, appellee submitted to a credit reporting agency that Jaden Terrance's account was "30 days past due." (DE 14-1 at 13). The report also shows appellee reported "positive activity" because of "account closed at your request." (Id. at 14).

On May 15, 2025, Jaden Terrance answered appellee's call and informed appellee's employee of the bankruptcy proceedings. (Hr'g Tr. 18:9-19:1). After this call, appellee ceased collection attempts. (See id.).

Appellant Jaden Terrance is diagnosed with major depressive disorder and post-traumatic stress disorder ("PTSD"). (Hr'g Tr. 20:9-12). At hearing, she testified that "[appellee's] calls [were] reminiscent of some the stalking behavior that I had in the past. It was a trigger, having the multiple calls, the multiple emails." (Id. at 24:1-3).

Appellant Jesse Terrance is diagnosed with "autism, PTSD, and hereditary angioedema ['HAE'] [.]" (Id. at 13:15). "People with HAE experience recurrent episodes of swelling in the hands, feet, genitals, stomach, face, and/or throat that can last from two to five days." (DE 14-1 at 50). HAE episodes "can be fatal." (Id.). Jesse Terrance requires injections every two weeks to prevent HAE episodes. (Id. at 49).

Jaden Terrance testified: "Jesse experienced an abdominal attack on – I believe it's April 23rd as a result of me missing their [] preventive dosage three days before because we received a series of calls that were all around that time period." (Hr'g Tr. 13:20-24). "I think there were three calls the day before – two calls the day before that, and [I] was so stressed, I missed it, and Jesse ended up having an abdominal attack that caused them to be incapacitated for two days." (Id. at 13:24-14:2).

4

Jaden Terrance also became emotional during her testimony, after which the bankruptcy court told her to "take your time" before continuing. (Id. at 25:6). Jaden Terrance began making the closing statement for appellants; however, Jesse Terrance finished the closing statement after Jaden Terrance was unable to continue. (See id. at 28:10-29:22).

Also at the June 18, 2025 hearing, the bankruptcy court explained to appellants: "So, the documents that you attached to your motion, while they are technically on the record, they are not in evidence." (Id. at 10:1-3). "[Y]ou're going to have to testify about all of the documents that you want me to consider." (Id. at 10:5-6). Jaden Terrance then testified to the contents of the documents, but appellants did not move to enter the exhibits into evidence. (See id. at 12:3-14:5).

## COURT'S DISCUSSION

A.  Standard of Review

This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a) to review the bankruptcy court's orders. "An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." 28 U.S.C. § 158(c)(2). "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." Harman v. Levin, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985).[1] "Legal conclusions are reviewed de novo, but findings of fact will only be set aside if clearly erroneous." Schlossberg v. Barney, 380 F.3d 174, 178 (4th Cir. 2004). A finding of fact is clearly erroneous, although there is evidence to support it, when the reviewing court, after carefully examining all the evidence, is "left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).

---

[1] Internal citations and quotation marks are omitted from all citations unless otherwise specified.

5

B.     Analysis

    1.     Stay Violation as to Jesse Terrance

Once a debtor files a bankruptcy petition, "11 U.S.C. § 362 provides generally for the automatic stay of any and all proceedings against a debtor." Budget Serv. Co. v. Better Homes of Va., Inc., 804 F.2d 289, 292 (4th Cir. 1986). The stay protects against "any act to collect, assess, or recover a claim against the debtor." 11 U.S.C. § 362(a)(6).

"The consequences of violation of the automatic stay provisions of § 362 are set out in § 362[(k)] which provides that '[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.'" Id. at 292.

To recover under for a violation of the automatic stay, "a plaintiff must show (1) that the defendant violated the stay imposed by § 362(a), (2) that the violation was willful, and (3) that the plaintiff was injured by the violation." Houck v. Substitute Tr. Servs., Inc., 791 F.3d 473, 484 (4th Cir. 2015) (emphasis removed).

In the instant case, appellee only sought recovery from appellant Jaden Terrance. The bankruptcy petition states the debt only applies to Jaden Terrance, (See DE 14-1 at 89), and appellee sent emails only to Jaden Terrance. (See id. at 9-10). Appellee only called Jaden Terrance's phone and never Jesse Terrance. (See Hr'g Tr. 12:12-13). Therefore, appellee did not attempt to collect any debt from Jesse Terrance.

   Moreover, the automatic stay as to the debt owed to appellee only applies to Jaden Terrance and not Jesse Terrance, as only Jaden Terranc is a party to that debt. (See DE 14-1 at 89). Accordingly, appellee did not violate the stay as to Jesse Terrance.

Appellants argue that because they filed a joint bankruptcy petition, "both spouses are 'debtors' in this case, each entitled to the full protection of § 362(a)." (Apellants' Br. (DE 22) at 14).

Filing a joint bankruptcy petition, however, does not create an automatic stay applied to both parties. See In re Bunker, 312 F.3d 145, 153 (4th Cir. 2002) ("Joint administration does not affect the substantive rights of either the debtor or his or her creditors."). The estates of Jesse Terrance and Jaden Terrance "remain[] separate and distinct" despite the joint petition. Id. Accordingly, Jesse Terrance is not entitled to the stay protection of the Coastal debt, as only Jaden Terrance is a party to it. (See DE 14-1 at 89).

Appellants also argue the bankruptcy court incorrectly interpreted In re Lyle, 662 B.R. 229 (Bankr. E.D.N.C. 2024). Appellants contend: "In re Lyle did not hold that § 362(k) relief is categorically unavailable to non-obligor spouses; rather, the court found that the co-debtor there had not carried her burden of proof on causation and damages." (Apellants' Br. (DE 22) at 15).

However, the bankruptcy court in that case found: "Mrs. Lyle, however, was not a target of the attempted debt collection. Her name is not on any of the invoices placed into evidence at the hearing, and no harassing phone calls or other collection efforts were made by [the creditor]." In re Lyle, 662 B.R. at 235. "The filing of a joint petition in bankruptcy by husband and wife creates two individual bankruptcy estates that for ease of convenience, where joint debts are asserted, may be administered together." Id. "[A]lthough the automatic stay was violated as to the bankruptcy estate of George Lyle through the mailings to him . . . No demand or creditor action was made or targeted to Mrs. Lyle." Id.

After making these findings, the bankruptcy court in In re Lyle further analyzed that "[e]ven if Mrs. Lyle had been included by name in the Corey Inc. invoices, she did not show at the

hearing how under section 362 she can pursue personal injury style damages such as requested medical bills from emotional distress." Id. Accordingly, by using the "even if" hypothetical, the court in Lyle did not base its holding on Mrs. Lyle not meeting the "burden of proof on causation and damages[,]" and appellants contention is without merit. (Apellants' Br. (DE 22) at 15).

Appellants also argue that "foreseeability -not direct targeting- is the governing test for whether a non-obligor spouse may recover damages when a stay violation foreseeably harms the household." (Id.) (emphasis removed). Appellants base this assertion on In re Dawson, 390 F.3d 1139 (9th Cir. 2004), which appellants claim held that "that a plaintiff need not prove that a creditor's conduct was directed at them personally; it is enough that the emotional distress was a 'natural, foreseeable consequence' of the violation." (Apellants' Br. (DE 22) at 15).

This language and holding, however, appear nowhere in Dawson. While the Ninth Circuit held a debtor could recover emotional distress damages for willful stay violations, it did not hold what appellants claim. See In re Dawson, 390 F.3d at 1148. Rather, the facts of Dawson undermine appellants' argument. There, the debtor's "wife submitted a declaration describing the emotional distress that she allegedly suffered, but she was not a debtor whose damages could be compensable under § 362(h), and she did not give evidence relating to her husband's alleged distress." See In re Dawson, 390 F.3d at 1150 (emphasis original).

Appellants also cite to multiple other cases purportedly allowing co-debtor spouses to recover for stay violations. (Apellants' Br. (DE 22) at 14-15). These cases, however, do not contain the language or holdings appellants claim.

In sum, the bankruptcy court correctly determined that appellee did not violate the automatic stay as to Jesse Terrance.

2. Failure to enter exhibits into evidence

At the sanctions hearing, the bankruptcy court explained to appellants: "the documents that you attached to your motion, while they are technically on the record, they are not in evidence." (Hr'g. Tr. 10:1-3). "[Y]ou're going to have to testify about all of the documents that you want me to consider." (Id. at 10:5-6). Appellants testified to the contents of their exhibits, but they did not move to enter the exhibits into evidence. (See id. at 12:3-14:5).

While a court may admit evidence on its own initiative, no authority imposes an affirmative duty on the bankruptcy court to admit exhibits on its own initiative. Therefore, the bankruptcy court had no obligation to enter appellants' exhibits into evidence sua sponte.

Appellants argue, due to their pro se status "[i]t was incumbent on the court to either admit the exhibits (barring a valid objection) or explain why any particular item was excluded." (Apellants' Br. (DE 22) at 14-15).

While a court must be lenient to pro se parties, a court "is not required to act as an advocate for a pro se litigant[.]" Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978). Accordingly, the bankruptcy court's deference to pro se litigants does not extend to serving as an advocate for them.

Furthermore, the bankruptcy court later confirmed: "all of the testimony, including the description of the contents of the various exhibits, was considered in the court's ruling." (DE 15-1 at 2). The sanctions order also specifically referenced some of the exhibits, such as the phone logs showing appellee's attempts to contact Jaden Terrance. (See DE 14-1 at 140).

The bankruptcy court did not err by not formally admitting appellants' exhibits on its own initiative without any prompting to do so by appellants.

3. Due Process Rights

"[D]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." Boddie v. Connecticut, 401 U.S. 371, 377 (1971).

"Title II [of the American with Disabilities Act ('ADA')] does not require States to employ any and all means to make judicial services accessible to persons with disabilities . . . it requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service." Tennessee v. Lane, 541 U.S. 509, 531–32 (2004). "This duty to accommodate is perfectly consistent with the well-established due process principle that, 'within the limits of practicability, a State must afford to all individuals a meaningful opportunity to be heard' in its courts." Id. at 532.

At the sanctions hearing, Jaden Terrance gave an opening statement, after which she testified to the contents of appellants' exhibits, her damages, and the facts at issue. (Hr'g Tr. 12:3 – 25:15). At the conclusion of her testimony, the bankruptcy court asked Jaden Terrance: "Okay, Ms. Terrance, do you have any other evidence that you wish for the Court to consider?" (Id. at 25:23-24). She responded "I think that was it." (Id. at 26:1).

After Jaden Terrance became emotional during her testimony, the bankruptcy court told her "take your time[,]" after which Jaden Terrance responded to the bankruptcy court's question. (Id. at 25:3-9). Then, when Jaden Terrance became emotional during her closing statement, the bankruptcy court allowed Jesse Terrance to finish the closing statement. (Id. at 28:10-29:21).

10

Accordingly, the bankruptcy court gave Jaden Terrance a "meaningful opportunity to be heard" consistent with due process. Lane, 541 U.S. at 532 (2004). The bankruptcy court gave Jaden Terrance the opportunity to testify, give opening and closing statements, and asked appellants whether they had any additional evidence to present. The bankruptcy court also allowed Jaden Terrance time before responding when she became emotional during her testimony.

Appellants argue the bankruptcy court violated due process and failed to accommodate appellants' disabilities under the ADA. Appellants state: "Appellant Jaden West Terrance suffered an acute PTSD flashback-crying and visibly shaking-immediately following cross-examination by Coastal's counsel. Rather than pause, inquire, or offer accommodation, the bankruptcy court pressed forward." (Appellants' Br. (DE 22) at 19).

However, even assuming these assertions violated due process, these statements are contradicted by the record. After Jaden Terrance became emotional, the bankruptcy court told her "take your time[,]" and she replied "thank you" before responding to the bankruptcy court's question. (Hr'g Tr. at 25:5-9).

Appellants also argue "Under Tennessee v. Lane, 541 U.S. 509 (2004), courts have an affirmative duty to inquire and provide reasonable modification once a disability is apparent." (Appellant's Br. (DE 22) at 20).

However, Lane does not so hold. Lane affirmed that the ADA "as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." 541 U.S. at 533-34.

Lane did affirm the ADA's affirmative requirement "to take reasonable measures to remove architectural and other barriers to accessibility." 541 U.S. at 531. The case discussed

11

providing accessibility to courthouses for the physically disabled. See id. at 532-33. The Supreme Court described Title II of the ADA as a "reasonable prophylactic measure, reasonably targeted to a legitimate end." (Id. at 533). Accordingly, Lane does not support appellants' argument.

Appellants also cite Pierce v. District of Columbia, 128 F. Supp. 3d 250 (D.D.C. 2015). There, the court held "that the failure of prison staff to conduct an informed assessment of the abilities and accommodation needs of a new inmate who is obviously disabled is intentional discrimination in the form of deliberate indifference and violates Section 504 and Title II as a matter of law." Pierce, 128 F. Supp. 3d at 268. These facts and holding are not analogous to the hearing in the instant case.

Lastly, appellants claim "the bankruptcy court improperly placed the burden of calculating appropriate compensatory damages on Appellant Jaden West Terrance, despite Jaden exhibiting visible psychological distress stemming from a PTSD flashback." The bankruptcy court's failure to offer "a recess, alternative accommodation, or post-hearing submission opportunity-violated Appellant's rights under the Americans with Disabilities Act and undermined the fundamental fairness of the proceeding." (Appellants' Br. (DE 22) at 21).

Regarding this exchange, the bankruptcy court asked Jaden Terrance "what, in your mind, do you think is a fair monetary compensation for the [] calls, and emails, and the stress." (Hr'g Tr. 35:25-36:1). Jaden Terrance responded: "honestly I am not sure. I was just going to leave it to your discretion in this matter." (Id. at 36:3-4). The bankruptcy court continued: "But it is also helpful for me to have some idea of what -- kind of what universe you're even thinking in, just so I know what your expectation is. But you don't have to come up with something." (Id. at 36:19-22). Jaden Terrance responded "okay" and did not provide a damages estimation. (Id. at 36:23).

12

This exchange with the bankruptcy court did not violate appellants' rights under the ADA or the Due Process clause. Jaden Terrance was not "excluded from participation in or [] denied the benefits of the services, programs, or activities of a public entity, or [] subjected to discrimination by any such entity." 42 U.S.C. § 12132. By asking for a damages estimation, the bankruptcy court did not deprive Jaden Terrance of a "meaningful opportunity to be heard[.]" Lane, 541 U.S. at 532 (2004).

Accordingly, bankruptcy court did not err through a violation of appellants' due process rights. Thus, remand for a new hearing is not warranted.

4.  Standard for Willfulness

"To constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay." In re Strumpf, 37 F.3d 155, 159 (4th Cir. 1994), rev'd on other grounds, Citizens Bank of Md. v. Strumpf, 516 U.S. 16 (1995).

In the instant case, appellee does not dispute it willfully violated the automatic stay as to Jaden Terrance. (See Hr'g Tr. 26:14-25). Accordingly, the bankruptcy court determined "Coastal willfully violated the automatic stay as to Jaden Terrance and that sanctions in the amount of $5,000 are appropriate." (DE 14-1 at 136).

Appellants argue the bankruptcy court applied the wrong standard for willfulness, and "[t]his Court should reverse that aspect of the order and hold that Coastal willfully violated the stay." (Apellants' Br. (DE 22) at 14-15).

The bankruptcy court did, however, find appellee willfully violated the stay. (DE 14-1 at 136). The court has no grounds to overturn the bankruptcy court and find appellee willfully violated the stay when the bankruptcy court already did so.

Accordingly, the bankruptcy court's ruling in this part is affirmed without modification.

13

5. Failure to Instruct Appellants on Legal Standard for Damages

Appellants argue the bankruptcy court "failed to apply a clear standard for damages[,]" and "made no findings whatsoever about whether Appellants met any standard, leaving the impression that it simply ignored whole swaths of unrebutted evidence." (Apellants' Br. (DE 22) at 14-15) (emphasis removed).

First, the bankruptcy court applied a clear legal standard for damages. In its order, the bankruptcy court stated: "A debtor must prove actual damages by a preponderance of the evidence, based on 'concrete, non-speculative evidence.'" (DE 14-1 at 133). The bankruptcy court continued, stating that "Courts in the Fourth Circuit have consistently held that to establish emotional distress damages, a debtor must (1) suffer significant harm; (2) clearly establish the significant harm; and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay." (Id.).

Next, the bankruptcy court's order discussed how the emotional distress Jaden Terrance suffered, was "distinct from the general anxiety and stress felt by all who find themselves in the financial distress that leads to a bankruptcy filing." (Id. at 134). "Jaden suffered significant harm, both to her personal well-being and the well-being of her household, as the heightened stress and anxiety that she experienced caused her to miss Jesse's medication dose. This harm flows directly from Coastal's communication attempts." (Id. at 134-135). "Thus, Jaden has met her burden to establish that she experienced significant harm that was proximately caused by Coastal's violations of the automatic stay." (Id. at 135).

Moreover, as noted above, the bankruptcy court had no duty to explain the legal standards for damages to appellants or act as an advocate on their behalf. See Gordon, 574 F.2d at 1152.

14

Appellants' contention that the bankruptcy court "failed to apply a clear standard" or "made no findings whatsoever about whether Appellants met any standard" is contradicted by the in-depth discussion present in the bankruptcy court's order.  (Apellants' Br. (DE 22) at 14-15) (emphasis removed).

Appellants also argue that the bankruptcy court failed to consider Jesse Terrance's damages in its findings.  (Id. at 24-26).  However, the bankruptcy court correctly determined that appellee did not violate the stay as to Jesse Terrance. (DE 14-1 at 136).  Therefore, the bankruptcy court had no need to discuss Jesse Terrance's damages.

Appellants assert the bankruptcy court ignored "credit damage" due to appellee "report[ing] to Experian that the Terrances' loan was '30 days past due' and 'closed at [the customer's] request,' with no mention of the bankruptcy filing." (Appellants' Br. (DE 22) at 27-28) (emphasis removed).  Appellants state this report was a "as an 'act to collect or recover' a prepetition claim by coercing payment through credit damage."  (Id. at 28).  However, appellants point to no evidence in the record, nor did they testify at the hearing, as to how appellee attempted to "coerce[] payment" through these credit reports.  (Id.).

Appellants also offer a series of cases to demonstrate what a "proper calculation of damages" should be. (Appellants' Br. (DE 22) at 29-30).  However, the bankruptcy court's order demonstrates it carefully considered the evidence, and upon review, the court finds no clear error in the bankruptcy court's factual findings.  Nor do appellants point to any error in the actual factual findings, rather than alleged omissions, of the bankruptcy court.

Furthermore, the cases cited by appellants are not factually analogous.  For instance, appellants cite In re Lansaw, 853 F.3d 657 (3d Cir. 2017), where the creditor, "after he was initially denied entry, entered the daycare, backed [the debtor] against the wall, and asked her three times

15

whether she wanted to hit him." Id. at 669. In re Hebner, No. BK08-82938, 2015 WL 128137 (Bankr. D. Neb. Jan. 8, 2015), involved a violation of a discharge injunction, where the creditor continued collection attempts three years after bankruptcy proceedings had discharged the debt. Id. at *3.

The amount of damages awarded is within the discretion of the bankruptcy court. See Strumpf, 37 F.3d at 159. As discussed above, appellants do not show the bankruptcy court disregarded or improperly weighed evidence. Accordingly, the bankruptcy court did not abuse its discretion by awarding $5,000 in damages and in explaining its decision.

6. Punitive Damages

A bankruptcy court may award punitive damages for willful stay violations "in appropriate circumstances." 11 U.S.C. § (k)(1).

"[P]unitive damages can be imposed to further legitimate interests in punishing unlawful conduct and deterring its repetition." Saunders v. Branch Banking and Tr. Co. of Va., 526 F.3d 142, 152 (4th Cir. 2008). Punitive damages can be warranted based on "the degree of reprehensibility of the defendant's misconduct[.]" Id. The decision to award punitive damages is within the discretion of the bankruptcy court. See Strumpf, 37 F.3d at 159.

Appellants sought damages to "deter future conduct" by appellee. (DE 14-1 at 6). At hearing, counsel for appellee stated to the bankruptcy court: "I know that you know that I have represented Coastal for a very long time. I know that you know that Coastal is not a frequent flier." (Hr. Tr. 30:18-19). Counsel continued: "I know that you know that Coastal is a credit union. It's not a big bank. It is local. It is invested locally, and it takes things like this harm to its members very, very seriously." (Id. at 30:20-23).

Subsequently, the bankruptcy court found appellee's conduct did not warrant punitive damages, stating: "Based on the fact that Coastal's postpetition collection activities are attributable to an undiscovered issue with newly-instituted collections software that Coastal corrected immediately upon notice of the errors with respect to Jaden' s account, the court does not find that Coastal's actions warrant an award of punitive damages." (DE 14-1 at 145).

Appellants argue the bankruptcy court erred by "allow[ing] Coastal's counsel to inject personal familiarity and off-record information into the hearing." (Appellants' Br. (DE 22) at 21). The bankruptcy court's "[f]ailure to staunch such an argument creates an impermissible appearance of partiality." (Appellants' Reply Br. (DE 24) at 10).

However, even assuming appellee's counsel's statements were inappropriate, the bankruptcy court's purported failure to stop this argument, or subsequently denying appellants' request for punitive damages, does not sufficiently show an appearance of partiality. See Liteky v. United States, 510 U.S. 540, 555 (1994) ("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.").

Moreover, appellants have not shown the bankruptcy court based its decision on alleged extra-judicial facts. The bankruptcy court's order does not reference appellee's history or reputation. (See DE 14-1 at 145). Instead, the bankruptcy court declined to award punitive damages because "Coastal's postpetition collection activities are attributable to an undiscovered issue with newly-instituted collections software that Coastal corrected immediately upon notice of the errors with respect to Jaden' s account." (DE 14-1 at 145).

Appellants also state "a proceeding violates due process if a party is effectively prevented from presenting their case or if extraneous factors (like a prosecutor's personal assertions of credibility) taint the fairness of the hearing." (Appellants' Br. (DE 22) at 21).

However, as noted above, due process requires a "meaningful opportunity to be heard[,]" which appellants had. Boddie, 401 U.S. at 377.

Accordingly, the bankruptcy court did not abuse its discretion in declining to award punitive damages.

7. Findings

Federal Rule of Civil Procedure 52(a)(1) provides: "In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." The Bankruptcy rules state: "Fed. R. Civ. P. 52 applies in an adversary proceeding." Fed. R. Bankr. P. 7052.

"[T]he federal rule relating to findings of a trial court does not require the court to make findings on all facts presented or to make detailed evidentiary findings; if the findings are sufficient to support the ultimate conclusion of the court they are sufficient." Darter v. Greenville Cmty. Hotel Corp., 301 F.2d 70, 75 (4th Cir. 1962). "Nor is it necessary that the trial court make findings asserting the negative of each issue of fact raised." Id.

The bankruptcy court made sufficient findings "to support the ultimate conclusion of the court." Id. The bankruptcy court's order provided a factual summary of the allegations. (See DE 14-1 at 129-31). Next, the bankruptcy court discussed the legal standard for stay violations and the standard for the recovery of damages, including emotional distress damages. (Id. at 131-33). The order then discussed how Jaden Terrance's testimony at the hearing demonstrated she "suffered significant harm, both her personal well-being and the well-being of her household, as

18

the heightened stress and anxiety that she experienced caused her to miss Jesse's medication dose." (Id. at 134-35).

The bankruptcy court discussed the legal standard for punitive damages, and why appellee's conduct did not warrant punitive damages. (Id. at 135). Lastly, the bankruptcy court found Jesse Terrance was not entitled to damages because "Jesse is not an obligor on the Coastal account and was not a target of the collection efforts." (Id. at 136).

These findings are sufficient to "support the ultimate conclusion of the [bankruptcy] court." Darter, 301 F.2d at 75. The bankruptcy court thoroughly explained the legal standards and questions posed, and how the facts demonstrated Jaden Terrance was entitled to damages, and why Jesse Terrance was not entitled to damages. Accordingly, these findings are also sufficient for appellate review.

Appellants argue the bankruptcy court's order violates Rule 52(a)(1) because: "it lacks the requisite findings of fact and conclusions of law on multiple major issues, thwarting meaningful appellate review." (Appellants' Br. (DE 22) at 30) (emphasis removed). In particular, appellants state the bankruptcy court did not consider emails from Appellee's counsel with "disclaimers referencing the Fair Debt Collection Practices Act, indicating they were attempts to collect a debt[,]" "Coastal's inaccurate credit reporting[,]" and "did [not] mention the testimony about reliving trauma from clinically documented PTSD, anxiety, depression, and the debilitating HAE attack that the Debtors gave." (Appellants' Br. (DE 22) at 32).

First, the bankruptcy court did in fact discuss how "Jaden established a history of personal circumstances and challenges that rendered Coastal's communications more damaging to her than the identical communications may have been to another person . . . Jaden credibly testified that the repeated calls were particularly triggering to her, and further that her history made it extremely

19

difficult for her to answer Coastal's calls or to contact Coastal herself and ask Coastal to stop." (DE 14-1 at 143-44).

Moreover, the bankruptcy court is not required to "make findings asserting the negative of each issue of fact raised." <u>Darter</u>, 301 F.2d at 75. The bankruptcy court determined appellee willfully violated the automatic stay as to Jaden Terrance, and the bankruptcy court neglecting to mention counsel for appellee's emails or alleged inaccurate credit reporting does not render the findings insufficient, so long as "the findings are sufficient to support the ultimate conclusion of the court." <u>Id.</u> As discussed above, the bankruptcy court's findings are sufficient to support its conclusion and for appellate review.

Accordingly, the bankruptcy court did not err or fail to make sufficient factual findings or conclusions of law.

## CONCLUSION

For the forgoing reasons, the bankruptcy court's order is AFFIRMED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 20th day of February, 2026.

_____
LOUISE W. FLANAGAN
United States District Judge